### ROGERS L. & M. WORKS *v.* SOUTHERN RAILROAD ASS'N.

(*Circuit Court, S. D. New York.* March 12, 1888.)

RAILROAD COMPANIES—BONDS OF MORTGAGES—POWER TO GUARANTY BONDS OF OTHER COMPANIES.

A railroad corporation, which has power by its charter to issue its own bonds, has power to guaranty the bonds of another railroad corporation, which it receives in payment of a debt due to it, and which it sells for value, or transfers in payment of its own debts, the guaranty being given as the means of augmenting the credit of the bonds, or to enable it to obtain an adequate price for them.

At Law.

*Benj. H. Bristow, Anthony Higgins,* and *David Wilcox,* for plaintiff.
*Bangs & Stetson,* for defendant.

SHIPMAN, J. This is an action at law, in which, by written stipulation signed by the parties, a jury was waived, and the cause was tried by the court. Upon such trial the following facts were found to have been proved, and to be true: The averments of the first, second, third, fourth, fifth, sixth, seventh, and ninth paragraphs of the complaint are true, except that the guaranty described in the seventh paragraph was not indorsed upon the bonds by resolution of the stockholders of the defendant, and with the omission of the words "for good and valuable consideration" in said paragraph. The facts in regard to the consideration for the said guaranty are hereinafter specially stated. The Mississippi Central Railroad Company, hereinafter called the "Mississippi Company," had become indebted to the defendant before January 26, 1874, in a large amount, for advances which were made to said company for the purpose of completing its road. In settlement of that debt the said Mississippi Company delivered to the defendants its coupon bonds, for the sum of $1,000 each, known as "Income and Equipment Bonds," to the amount of $5,000,000. These bonds include the 447 bonds which are particularly described in the complaint. At a meeting of the directors of the defendant, held on January 26, 1874, the following resolutions were unanimously adopted:

"Resolved, that when the said bonds are delivered to this company by the said the Mississippi Central Railroad Company, the corporate seal of this company, attested by the signatures of the president and secretary, be affixed to a

guaranty to be indorsed on each of the said five thousand bonds in the following form: 'For valuable consideration the Southern Railroad Association guaranties to the holder of the within bond the punctual payment of the principal and interest thereof when and as the same shall fall due, according to the terms and promises of the said bond. Witness the corporate seal of the said company, this 26th day of January, A. D. 1874.'

"Resolved, that the treasurer of this company be authorized to appropriate such number as may be required of the said bonds which shall have been taken by this company on account of advances made to the Mississippi Central Railroad Company, to the purchase of from twenty-eight to thirty thousand (28,-000 to 30,000) shares of the capital stock of the New Orleans, Jackson & Great Northern Railroad Company; provided, that in making the said purchase the bonds, with the coupon of 1874 detached, be taken at par, and the price of the shares not to exceed seventy-five dollars per share for the full-paid shares of one hundred dollars each."

Said guaranty was thereupon indorsed upon each of said $5,000 bonds.

At a meeting of the stockholders of the defendant, on June 22, 1874, at which meeting 18,798 of the 20,000 shares into which the capital stock of the defendant was divided was represented, the proposed consolidation of the Mississippi Company with the New Orleans Company under the name of the New Orleans, St. Louis & Chicago Railroad Company, hereinafter called the "St. Louis Company," was approved, and it was voted that the executive officers of the defendant sell to said last-mentioned railroad company their interest in the lease of the Mississippi Company, upon such terms and on such conditions as may be agreed upon. The following preamble and resolutions were adopted:

"Whereas, it is advisable to raise the sum of eight hundred thousand dollars to pay the floating indebtedness of this company, and it is believed that the object can be attained most advantageously for the interests of the stockholders of this company by offering to each one the option or privilege of purchasing certain of the assets of this company at a price sufficient to secure the required sum: Therefore, be it resolved—*First.* That each stockholder of this company who shall, before the 1st day of July next, pay to the treasurer of this company, either in cash or in the notes or obligations of this company, a sum equal to forty per cent. of the par value of the stock of this company standing in the name of such stockholder on the first day of July, 1874, shall be entitled to receive mortgage bonds of the Mississippi Central Railroad Company of the issue known as the 'Consolidated Mortgage Gold Bonds,' to an amount equal at the par thereof to the said payment, and also mortgage bonds of the said Mississippi Central Railroad Company of the late issue, known as 'Income and Equipment Bonds,' to amount equal at the par thereof to the amount at par of the stock of this company standing in the name of such stockholder on the books of this company at the closing of the books on the first day of July, A. D. 1874. *Second.* That the secretary be directed to forward a copy of the above resolution to each of the stockholders of this company."

The plaintiff was the owner of 2,767 shares of the capital stock of the defendant, which stood in the name of Jacob S. Rogers, and Jacob S. Rogers, trustee. Mr. Rogers was president of the plaintiff, and was one of the directors of the defendant, and was present at the directors' meeting of January 26, 1874, and at the stockholders' meeting of June 22, 1874. After June 22, 1874, the defendant, for value, transferred and

delivered 220 of said income bonds, guarantied as aforesaid, to the St. Louis Company, and said company thereafter, for value, transferred and delivered same 220 bonds to the plaintiff, which still holds and owns the same. One hundred and forty of said bonds were numbered 4,361 to 4,500, to each of which said numbered bonds were and are attached 18 coupons beginning with coupon No. 5, falling due January 1, 1876, and including coupon No. 22, falling due December 1, 1884, the date of the maturity of the bonds. The residue of the said 220 bonds were numbered 4,501 to 4,580. To each of said last-mentioned and numbered bonds were and are attached 19 coupons, beginning with coupon No. 4, falling due December 1, 1875, and including coupon No. 22, falling due as aforesaid. Pursuant to the said resolutions of June 22, 1874, and after said date, the said Rogers, acting in behalf of the plaintiff, elected to pay the defendant 40 per cent. assessment upon the whole or a portion of its stock; and the plaintiff paid the same by surrendering to the defendant its notes for $90,680, which had beeen given by the defendant to the plaintiff for locomotives bought by the defendant, and the plaintiff thereupon received from the defendant consolidated bonds of the Mississippi Company to the amount of $90,000, and income and equipment bonds of said company to the amount of $226,700, being bonds numbered 3,501 to 3,726, inclusive, and $700 of bond No. 4,598. The additional $300 of the latter bond was acquired by a purchase for cash of scrip to that amount. To each of said bonds were and are attached 20 coupons, beginning with coupon No. 3, falling due June 1, 1875, and including coupon No. 22, falling due December 1, 1884. The plaintiff still owns said bonds and coupons. To each of said bonds said guaranty was attached. On June 22, 1874, and subsequently, the consolidated bonds of the Mississippi Company had a market value, but as they were not listed upon the New York Stock Exchange, their value is not now easily ascertained. Testimony was given that a quantity of these bonds was sold in February, 1874, at 85½ per cent. to another railroad company, which was assisting in building an extension of the defendant's railroad system for the purpose of enabling its own railroad to reach New Orleans. This cannot be considered as evidence of the market value of said bonds. I find that the bonds had a substantial market value, but I am unable to ascertain the price at which they could have been sold for cash. I find that in the sale of the income bonds to the stockholders the guaranty of the defendant was not a portion of or an incident of the property which was sold, and in and by the sale it was not understood that the purchasing stockholders were to receive and have the benefit and the promise of the guaranty. And further find that in the sale of the income bonds to the St. Louis Railroad Company the guaranty was an incident of and a valuable part of the property which was sold. The reasons for the difference in the findings with respect to the two sets of bonds are given hereafter.

The conclusions of fact and of law upon the foregoing findings of fact are as follows: The defendant corporation, which has power by its charter to issue its own bonds, has the power to guaranty the bonds of an-

other railroad corporation, which it receives in payment of the debt to it of said last-named railroad corporation, and which bonds it sells for value, or transfers in payment of its own debts; said guaranty being given as the means of augmenting the credit of said bonds, and enabling the defendant corporation to obtain an adequate price or equivalent for them. *Railroad Co.* v. *Howard*, 7 Wall. 392; *Arnot* v. *Railway Co.*, 67 N. Y. 315. The guaranty was originally placed upon the bonds for the purpose of augmenting their value, and enabling some of them to be used towards the purchase of the stock of the New Orleans Railroad. It is not important whether, when the guaranty was actually written upon the bonds, a consideration had been received for the promise, because whenever the bonds were thereafter sold to a *bona fide* purchaser, for value, or transferred in payment of the debts of the guarantor, the defendant had the legal right to guaranty their payment; and the bonds being delivered with the guaranty upon them, and no evidence existing, either in the nature of the transaction or from any other quarter, that the guaranty did not pass with the bonds as a part of the purchase, it is to be treated as if it was written at the time of the sale. *Arnot* v. *Railway Co.*, *supra*. It follows that the defendant is liable upon its guaranty of the 220 bonds which were sold or transferred for value to the St. Louis Company, and were afterwards transferred, for value, to the plaintiff. There was no infirmity in the title of the St. Louis Company to the bonds, and no lack of power in the defendant to give the guaranty. The same result would follow in respect to the 227 bonds which were delivered to the plaintiff, if the guaranty did in fact pass with the bonds as a part of the purchase. If, in the absence of fraud, the defendant sold and the plaintiff bought a guarantied bond, the defendant would be liable upon the guaranty, although it had made an improvident bargain. The question of fact is whether the guaranty was sold with the bond, and arises between the purchasing stockholder and the selling corporation. No question of law exists as to the rights of a purchaser from the stockholder.

The defendant was in pecuniary straits, and owed a floating debt of $800,000. It had as or among its assets consolidated bonds of the Mississippi Company, which had a substantial value, and were worth, perhaps, 50 cents on the dollar; and had also the income bonds of said company, which were worth very little without the guaranty of the defendant. To its stockholders, who would advance a sum equal to 40 per cent. of the par of their stock, it offered to transfer consolidated bonds equal in amount to the cash payment, and income bonds equal to the par of the stock. Thus, in addition to the consolidated bonds, the stockholders would receive income bonds of twice and one-half the amount of his cash payment, and, if the guaranty passed with the bonds, the defendant obliged itself, in order to pay a floating debt of $800,000, to pay $2,000,000 at 7 per cent. interest. Instead of owing $800,000, it owed $2,000,000, and had parted also with a valuable portion of its assets. The idea that the transfer of the guarantied bonds was a gift to the stockholders is unworthy of credit. The transaction was a sale,

with or without the guaranty; and the fact that the guaranty was not erased when the bonds were delivered raises a strong presumption that it was intended to be annexed, and to be a continuing obligation of the seller. This presumption is attacked by the inherent improbabilities of such a transaction, and by the fact that the resolutions which authorized the sale were silent in regard to the guaranty, a circumstance which furnishes no affirmative evidence on the subject. It is not credible that the defendant entered into the sale with the belief that it was undertaking to deliver guarantied bonds. Such a transaction would be too improvident, and too nearly akin to fraud upon any non-assenting stockholder, to commend itself to the judgment of the stockholders, and strong proof is required to compel a finding that they were willing to imperil the existence of the company by such a ruinous agreement. Notwithstanding the fact that the guaranty was not crased, and was delivered with the bonds, I am not able to believe that the contract of sale, as between the stockholders and the corporation, was that of a guarantied bond, but rather that the existence of the guaranty was deemed to confer no rights upon the stockholder against the company. I cannot find that a sale, which was made for the ostensible purpose of paying a debt of $800,000, was intended to increase it to $2,000,000, and bound the seller to the payment of the latter sum.

Judgment is ordered to be entered for the plaintiff for the amount due upon the 220 bonds numbered from 4,361 to 4,580, inclusive, and upon the unpaid coupons attached thereto, and the interest thereon, and the interest upon the principal sum after the maturity of said bonds.