·588          KENTUCKY REPORTS.          [Vol. 118

Fidelity Trust Co., &c. v: Louisville Gas Co.   Boone v. Same.

CASE 74—SUIT BETWEEN THE FIDELITY TRUST COMPANY AND OTHERS
AND THE LOUISVILLE GAS CO. AND BETWEEN GEORGE M. BOONE
AND THE SAME DEFENDANT AS TO THE RIGHT OF THE DEFENDANT
GAS CO. TO GUARANTY CERTAIN BONDS OF THE LOUISVILLE LIGHT-
ING CO.—JUNE 18.

# Fidelity Trust Co., &c. v. Louisville Gas Co.
## Boone v. Same.

APPEAL FROM JEFFERSON CIRCUIT COURT CHANCERY DIVISION, NO. 2—
SAMUEL B. KIRBY, JUDGE.

FROM THE JUDGMENTS PLAINTIFFS APPEAL.   AFFIRMED.

CORPORATIONS—POWERS—RIGHT TO GUARANTY BONDS—CHARTER.

1. Corporations other than those organized for governmental pur-
poses have the right to contract debts or borrow money for
the purposes of their business, and the power to give the custo-
mary evidence of debt and security therefor, which power is only
limited by provisions of their charter or statute.

2. The fact that the charter of a gas company provided that it might
issue bonds for $500,000, and execute a mortgage on its property
to secure them did not so limit the corporation's power to con-
tract indebtedness as to prevent it from guarantying the payment
of over $1,000,000 worth of bonds sold by it after it had lawfully
acquired them in the conduct of the business for which it was
organized.

STROTHER & HARDIN, FOR APPELLANTS.   DURELLE & Mc-
HENRY, OF COUNSEL.

### POINTS.

1. The endorsement proposed to be placed upon the bonds of
the Louisville Lighting Company by the Louisville Gas Company
as to the agreement to pay the principal of the bonds is not a
guaranty in any sense of the word, but creates a primary liabil-
ity upon the Louisville Gas Company to pay the amount of money
named in the bonds (not the principal of the bonds itself) to any
one demanding payment thereof in writing sixty days prior to
October 1, 1918.

2. That by the charter of the Louisville Gas Company the

Vol. 118]     APRIL TERM, 1904.          589

Fidelity Trust Co., &c. v. Louisville Gas Co.    Boone v. Same.

Legislature intended to limit and did limit said gas company in the issue of bonds, whether secured or unsecured, to the extent of $250,000 in the original charter, and in the amendment to the amount of $250,000.

3. That this transaction is equivalent to an issue by the Louisville Gas Company of bonds and is in effect such an issue as was prohibited and intended to be prohibited by the charter of the Louisville Gas Company, in excess of $250,000 in the original charter and $250,000 in the amendment.

4. That the effect of this transaction will bring upon the Louisville Gas Company all of the evils sought to be guarded against in its charter by the limitation on its bond issue above mentioned.

5. That while we admit ordinarily the power of a corporation to guarantee bonds of another corporation owned by it, in this case the contract not being one of guaranty, the law applicable to a guaranty of bonds has no application in this instance.

6. That the Legislature, having provided a fund for repairs, improvements and additions by a sale of stock and an issue of bonds, the implied power usually resident in a corporation to borrow money for such purpose is taken away by the provision of such fund, and this being an attempt to raise money for the same purpose is *ultra vires* and void.

7. That to construe the second section of the charter of the Louisville Gas Company as only intended as a limit on the bonded indebtedness secured by mortgage is to eliminate plain and unmistakable language in the charter by which a contrary intent is expressed, the purpose of said charter being to prevent a bonded indebtedness, whether secured or unsecured, and the word "may" is permissive and not obligatory.

8. That the endorsement proposed is not for the benefit of the Louisville Gas Company, but is highly detrimental to its interest; that no necessity exists for such a transaction as is proposed in the petition; that the company has ample funds to pay its debts, and that there is no necessity for resorting to the bonds of the Louisville Lighting Company.

9. That the Louisville Gas Company has issued $30,000 worth of bonds to persons other than those in this litigation and proposes to issue other bonds than the $30,000 worth mentioned and those mentioned herein, and that this action is really intended to get from the court a decision by which they may be enabled to place this endorsement upon the entire issue of said bonds, or at least, a much greater part thereof than is embraced in the suit herein, and that may be and will be used for purposes other than paying the debts of the company.

590          KENTUCKY REPORTS.          [Vol. 118

Fidelity Trust Co., &c. v. Louisville Gas Co.    Boone v. Same.

### AUTHORITIES.

Ithaca Gas Light Co. v. Treman, 30 Hun., N. Y., 212; Am. & Eng. Ency. of Law, vol. 14, p. 1128; Brandt on Suretyship and Guaranty, vol. 1, sec. 1; Bouvier's Law Dictionary, Definition of Guaranty; Cook on Stock and Stockholders 4 Ed., vol. 2, sec. 762; Ritchie v. Cralle, 22 Ky. Law Rep., 163; Daniel on Negotiable Instruments, vol. 2, secs. 1486, 1487, 1500, 1501, 1501a; Code of Virginia, 1873, p. 987, sec. 7, also p. 989, sec. 17; Am. & Eng. Ency. of Law, title Corporation, vol. 7, p. 774.

HUMPHREY, BURNETT & HUMPHREY, FOR APPELLEE.

### AUTHORITIES CITED.

Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky., 160; Commercial Bank of Orleans v. Newport Manufacturing Co., 1 B. M., 14; Frankfort Bridge Co. v. City of Frankfort, 18 B. M., 45; Louisville & Nashville R. R. Co. v. Literary Society of Saint Rose, 91 Ky., 400; National Bank of Cynthiana v. Mattingly & Sons, 18 Ky. Law Rep., 425; Rhorer, Receiver v. Middlesboro Town & Lands Co., 103 Ky., 148; Kentucky Citizens Association v. Lawrence, 106 Ky., 88; M. V. Monarch Co. v. Farmers' Bank, 105 Ky., 436; Farmers' Bank of Ky. v. Ohio River Steamboat Co., 108 Ky., 449; Railroad Company v. Howard, 7 Wall., 412; 2 Cook on Corporations, 5th Ed., sec. 775; R. R. Co. v. Howard, 7 Wall., 412; Arnot v. Erie R. R., 67 N. Y., 320; Todd v. Kentucky Union Land Company, 57 F. R., 62; Marbury v. Kentucky Union Land Co., 62 F. R., 250; 10 Cyclopedia, 1101; 3 Cook on Corporations, sec. 760, pp. 1969, 1971; sec. 761, p. 1980, sec. 760, p. 1972; 7 Thompson on Corporations, sec. 8340; Merchants' National Bank v. Citizens' Gas Light Co., 159 Mass., 505; S. C., 34 N. E., 1084; Marshall National Bank v. O'Neal, 11 Texas Civil App., 640; S. C., 34 S. W. Rep., 344; Underhill v. Santa Barbara Co., 93 Cal., 300; S. C., 23 Pa., Rep., 1050.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

The matter in controversy is as to the right of the Louisville Gas Company to guaranty certain bonds of the Louisville Lighting Company, which the first named company owns. The Louisville Gas Company was chartered by an act of the Legislature approved March 16, 1888. There are two acts amendatory of its charter—one approved April

26, 1890, and the other May 3, 1890. By the charter the gas company's capital stock may be $4,000,000, and all of it has been sold, except $400,000. So it will be seen that its capital stock is $3,600,000. Previous to the enactment of the amendments to its charter, it was supplying the city of Louisville and the citizens thereof with gas. The city of Louisville owns about one-fourth of the capital stock of the gas company. There being a demand that the city be lighted with electricity, the city and the gas company joined in a request to the Legislature to pass the amendatory acts. By section 1 of the act approved May 3, 1890 (Acts 1889-90, p. 128, c. 1266), it is provided that "the general council of the city of Louisville and the board of directors of the Louisville Gas Company having assented thereto, that the act entitled 'An act to incorporate the now existing Louisville Gas Company and grant it a new charter,' be and it is hereby amended as follows: The said company shall have all the power and authority necessary for the manufacture, distribution, and sale of electricity for illumination; and to that end may purchase, hold, and sell all real and personal property, including stock in other companies, necessary or convenient to the conduct of such business." By virtue of this provision of the charter the plaintiff bought the stock of a corporation called the Louisville Electric Light Company. It expended in the purchase of land and the erection of an electric light plant more than $1,200,000. Afterwards the electric light company by lawful authority consolidated with the Citizens' Electric Light Company, and the name of the company formed by the consolidation of the two companies is the Louisville Lighting Company. As a result of and as a consideration for the consolidation, the gas company received $1,600,000 of the bonds of the Louisville Lighting Company, and they are secured by a

592          KENTUCKY REPORTS.          [Vol. 118

Fidelity Trust Co., &c. v. Louisville Gas Co.    Boone v. Same.

mortgage. The right of the gas company to acquire and own the $1,600,000 of bonds is not questioned. In the erection of the electric light plant and otherwise, the gas company contracted a debt of about $800,000, about $770,000 of which is due the Fidelity Trust Company, the National Bank of Kentucky, the German Bank, and the German Insurance Bank. The gas company desired to discharge its indebtedness, and the institutions named agreed with the gas company to take the lighting company's bonds at $1.02 sufficient to discharge their debts. The gas company agreed to make a guaranty on the bonds as follows, to wit: "For value received the Louisville Gas Company hereby guarantees the payment of all coupons on this bond maturing on or prior to October 1, 1918, as and when the same may mature. It further agrees to purchase this bond at par on October 1, 1918, if so requested, by the holder, not less than sixty days prior thereto." The question having arisen as to the right of the gas company to deliver the bonds with the above guaranty, this action was instituted to have the question determined.

The Louisville Gas Company is a trading corporation, its chief business being to manufacture and sell gas and electricity. The rule is well recognized that corporations, other than those organized for governmental purposes, have the right to contract debts or borrow money for the purpose of accomplishing the purposes of their organization. This power exists, although not expressly granted by their charters, as fully as possessed by individuals. They also have the power to give the customary evidences of debt, and the customary security therefor. This power is only limited by provisions of their charters or statute. It would be a meaningless thing to grant a corporation a charter empowering it to conduct a certain enterprise, and then say that the

right to obtain the means necessary to the execution of the purposes of its organization was impliedly denied by the charter. In section 760, 3 Cook on Corporations, it is said: "The power of a corporation to borrow money is implied, and exists without being expressly granted by charter or statute. . . . Common law places no limit upon the amount which the corporation may borrow. The amount borrowed may be greater than the capital stock. . . . Although a gas company has no power to issue bonds in excess of its capital stock, yet this does not restrict its right to issue notes." In section 761, it is said: "The power of a corporation to sell and indorse notes received by it in connection with its own business is, of course, undoubted. It is a part of the every day business of most corporations." In 7 Thompson on Corporations, section 8340, it is said: "In the United States, in the absence of statutory provisions, the power to emit negotiable paper is regarded as one of the incidental or implied powers of every private corporation. The power necessarily follows from the power to borrow money or to become indebted in any lawful way. This is nothing more than giving that form of security for a debt which is exacted by ordinary business usage. Nor is this power affected by constitutional provisions or statutes imposing restraints upon the issuing of stocks or bonds." The conclusion can not be avoided that the gas company, to carry out the purposes of its organization, unless denied by its charter, has the right to contract debts, borrow money, and give customary evidence of debt.

It is urged that because the charter of the gas company provides that it may issue bonds for $500,000, and execute a mortgage on its property to secure them, and that their proceeds shall only be used in improving the plant, it hereby

limits its power to contract any other kind of indebtedness
or liability. Those who prepared the charter and its amend-
ments and the Legislature knew the meaning of the words
and terms employed in defining the power and limitations
on the power of the corporation. If it had intended to limit
the amount of indebtedness it should contract to the $500,-
000 of bonds, it would have been quite easy to have so
said. As the limitation is only as to a bonded indebtedness
which may be secured by mortgage, the necessary implica-
tion is that no limitation was intended to be placed on its
power to contract other indebtedness which like corporations
may legitimately contract in the execution of the purposes
of their organization. The charter of a corporation, read
in connection with the general law applicable to it, is the
measure of its power.

In Greenbay & M. R. Co. v. Union Steamboat Co., 107
U. S., 100, 2 Sup. Ct., 223, 27 L. Ed., 431, the court said:
"The charter of a corporation, read in connection with the
general laws applicable to it, is the measure of its powers,
and a contract manifestly beyond those powers will not
sustain an action against the corporation. But whatever,
under the charter and other general laws, reasonably con-
strued, may fairly be regarded as incidental to the object for
which the corporation is created, is not taken to be pro-
hibited." This rule of construction is approved in Rhorer,
Receiver, v. Middlesboro Town & Land Co., 103 Ky., 150,
19 R., 1788, 44 S. W., 448. In Merchants' National Bank
v. Citizens' Gaslight Co., 159 Mass., 505, 34 N. E., 1083,
38 Am. St. Rep., 453, the court had under consideration
a question very similar to the one here for solution. It
was an action on a promissory note. The statute construed
reads as follows: "No gas company, unless specially au-
thorized by the Legislature, shall hereafter issue any bonds

at less than the par value, nor for an amount exceeding its capital actually paid in, and applied to the purpose of its incorporation. The proceeds of all bonds issued shall be applied to the payment of obligations incurred for the enlargement or extension of the works and the purchase of real estate for the use of the company or for the payment of liabilities existing at the time of the passage of this act. A company may, upon vote of a majority in interest of its stockholders, at a meeting duly called for the purpose, issue bonds in accordance with the provisions of this section, to bear interest at not exceeding six per cent. per annum, and may secure the payment of principal and interest which shall accrue, by a mortgage of its franchise and other property." St. Mass., 1886, p. 345, c. 346, section 3. The court said: "The defendant corporation's first request for instructions relates to the effect of St. Mass., 1886, p. 345, c. 346, upon the power of defendant corporation to issue promissory notes. The third section of that statute relates to the issue of bonds by gas companies, and gives the company the right to secure bonds issued in accordance with the provisions of the section by mortgage of the franchise and property of the company, but we find nothing in the charter which affects the right of such company to issue promissory notes when convenient or necessary in the prosecution of its business." The Constitution of California prohibited corporations from increasing their stock and bonded indebtedness, except in a specified manner. A corporation contracted a debt, executed its note therefor, and a mortgage to secure it, without doing that which the statute required to be done before increasing its bonded indebtedness. In an action to enforce the payment of the debt, the court, in Underhill v. Santa Barbara Co., 93 Cal., 300, 28 Pac., 1049, among other things, said: "Manifestly it is not

the intention of the Constitution to prohibit the increase of all kinds of indebtedness, since the prohibition of a particular kind implies that there may be indebtedness of another kind." In Clark & Marshall on Corporations, section 179, it is said: "A limitation of the amount of a particular kind of indebtedness noes not apply to other kinds of indebtedness." We conclude that the gas company had the authority to contract the debts due the appellants.

It is conceded that the gas company was authorized to consummate the deal which resulted in its rightful ownership of the $1,600,000 of the light company's bonds. As the gas company owns the bonds, its right to sell them necessarily exists. It owes debts, and is under a legal obligation to pay them. In the judgment of the corporation, it is best to sell the lighting company's bonds which it owns for that purpose. If it has the right to sell them, it certainly has the right to apply their proceeds to the payment of its debts. If it can apply the proceeds to that purpose, it can sell them to its creditors, and thus discharge its debts. The bonds, not having a market value, can not be sold at their real value unless the gas company gives the guaranty to which we have alluded. As the gas company acquired the bonds in carrying out the legitimate purposes of its organization and desires to sell them in furtherance of the same purpose, it follows that, if the guaranty is necessary to make the proceeds available, it has the right to make it. It surely creates a personal liability. If it had the power to contract debts, and thus create a personal liability, it certainly has the power to create another personal liability to meet the former one. An objection is made because the bonds did not mature until 1918. This objection can only go to the question of the advisibility of creating an obligation to continue during that period, which question alone must be

determined by the gas company. The objection can not go to the question of power, which we alone have under consideration. Notes executed by the gas company to the appellant for the debts which it owes them would be valid, whether they were made payable one day or several years after date. If it held notes of customers payable years after date, it could assign them to the appellants in payment of their debts. The assignment by operation of law would create a personal liability. In the instance cited, as would be in the proposed guaranty, a personal liability would be created in the execution of the purposes of the organization, and would be enforceable. The guaranty requires the gas company to redeem the bonds if not paid. That fact can not affect the question of the power to create a personal liability. The purpose of the guaranty is to give a market value to the bonds and make them available. Suppose, instead of selling the bonds with the guaranty, the gas company should execute its promissory notes to the appellants for the debts, and pledge the bonds to secure them; certainly it would not be contended that a personal liability would not be created, because the bonds were pledged as collateral. The difference in the liability between that arrangement and the proposed one is simply in form. In one instance the gas company would be required to pay notes which had been executed for the debts. In the other it would be required to pay its debts by the redemption of the bonds if not paid. The proposed guaranty by the gas company is not for the benefit of the lighting company, but for its own benefit. Therefore the precise question is not here involved, as would be in a case where one corporation guaranties the bonds of another corporation for the latter's benefit. There are some instructive cases involving the power of corporations to make contracts, and also guaranty the payment

of another corporation's obligations, when to do so is beneficial to the former company, by enabling it to promote its legitimate ends.

In Railway Co. v. Howard, 7 Wall., 412, 19 L. Ed., 117, the court said: "Abundant proof exists in this record that railway companies may issue their own bonds to raise money to carry into effect the purpose for which they were created, and it is difficult to see why they may not guaranty the payment of such bonds as they lawfully received from cities and counties, and put them upon the market, instead of their own, as the means of accomplishing the same end. Undoubtedly they may receive such bonds under the laws of the State, and, if they may receive them, they may transfer them to others; and, if they may transfer them to purchasers, they may, if they deem it expedient, guaranty their payment, as a means of augmenting their credit in the market, and saving the corporation from the necessity of issuing their own bonds to accomplish the same purpose. Considered, therefore, as an open question, the court is of the opinion that the objection is without merit. Private corporations may borrow money, or become parties to negotiable paper in the transaction of their legitimate business, unless expressly prohibited; and, until the contrary is shown, the legal presumption is that their acts in that behalf were done in the regular course of their authorized business." In Frankfort Bridge Co. v. City of Frankfort, 18 B. Mon., 45, the court, in effect, held that, if the charter and statutory law is silent upon the subject of the power to make a contract, it may be implied on the part of the corporation, when directly or indirectly necessary to enable it to fulfill the purposes of its existence. In section 775, Cook on Corporations (5th. Ed.), it is said: "One of the most important and yet difficult branches of railroad corporation law is the

question whether one railroad corporation may guaranty the bonds or dividends of another railroad corporation. After a great deal of litigation, the rule has become established that such a guaranty is valid, provided it is based on valuable consideration, and the consideration is such as the guarantor has power to receive or invest in." The case of Tod, etc., v. Kentucky Union Land Co. (C. C.) 57 Fed., 47 (opinion by Judge Lurton), and the same case on appeal, 62 Fed., 335, 10 C. C. A., 393 (opinion by Judge Taft), supports our conclusion that the gas company has the right to guaranty the payment of the bonds.

By a provision of the charter, the city of Louisville has an option to purchase the gas company's property at the expiration of the charter. It is urged that, if the liability resulting from the guaranty of the bonds exist at the time its right to purchase accrues, it would be embarrassed thereby. It is difficult to see how it will affect the rights of the city as a purchaser, not stockholder, because the amount of outstanding liabilities would have to be deducted from the purchase price ascertained in the manner provided by the charter. However, the question before us is not whether the city of Louisville will be able to become a purchaser of the property of the gas company, but it is whether the gas company proposes to exceed the power which we find it to possess when we read its charter in connection with general laws applicable to it.

We concur in the conclusion reached by the learned circuit judge in his able opinion.

The judgment is affirmed.

Petition for rehearing by appellant overruled.