ALLEY, APPELLANT, v. BUTTE & WESTERN MINING CO.,
RESPONDENT.

(No. 5,996.)

(Submitted November 10, 1926.   Decided November 29, 1926.)

[251 Pac. 517.]

*Promissory Notes—Corporations — Officers — Power to Execute
Notes—Want of Consideration—Matter of Defense—Cross-ex-
amination—Witnesses—Appeal—Attorney's Fees.*

Promissory Notes—Want of Consideration—Matter of Defense.

    1.  In an action on a promissory note against the maker, plaintiff
is not required to prove consideration, a note being deemed to have
been issued for a valuable consideration, and absence of it being
a matter of defense.

Same—Consideration—Improper Cross-examination.

    2.  Where plaintiff in her case in chief in an action on a promis-
sory note did not go into the matter of consideration, defendant
was improperly permitted on cross-examination to propound ques-
tions with relation thereto, under section 10665, Revised Codes
of 1921, making cross-examination proper only as to facts stated in
the witness' direct examination or connected therewith.

Same—Matter Stricken from Record—Cross-examination Thereon Im-
proper.

    3.  Where testimony elicited by plaintiff was ordered stricken
from the record, cross-examination of the witness thereafter as to
matters so stricken was improper.

Same—Witnesses—What Does not Constitute Impeaching One's Own
Witness.

    4.  A letter written by the president of a corporation to its man-
ager urging the latter to borrow money for the use of the com-
pany, on the strength of which he obtained funds from his wife on
a corporation note, was admissible as tending to show that such
officer, called by plaintiff as a witness and who on cross-examina-
tion had testified that the company was in good financial condition
and needed no money, had made statements inconsistent with such
testimony (sec. 10666, Rev. Codes 1921), and was therefore not
open to the objection that plaintiff attempted to impeach her own
witness.

    1.  See 3 R. C. L. 929.
    2.  See 28 R. C. L. 604.

Same—Corporations—Denial of Execution of Note by Officers of Corporation—Plaintiff not Required to Prove Authority of Officers.

5. In an action on a corporate note executed by the president and secretary of the company, plaintiff was not required, in view of defendant's denial of the execution of the note, to prove the authority of the officers to execute it.

Same—Power of Industrial Corporation to Issue Notes.

6. *Held*, that in the absence of a state statute prohibiting ordinary industrial corporations from borrowing money on promissory notes, or a showing that a particular corporation by its articles of incorporation or its by-laws is prohibited from so doing, a mining corporation, under section 5994, Revised Codes of 1921, impliedly granting such power when necessary to be exercised in the transaction of its ordinary affairs or for corporate purposes, may do so.

Same—Power of President of Corporation to Issue Note—Ratification by Board of Directors—Custom.

7. The general implication that where the president of a corporation makes a contract within the ordinary scope of the corporation a person dealing with the president may proceed upon the assumption that the officer has authority to bind his principal must be more strongly drawn where the instrument in question is a promissory note of the corporation; but where it is shown that like notes issued by him in the name of the corporation, signed by its president and secretary, with the corporate seal affixed, were ratified by it, the testimony tends to prove a custom and acquiescence from which implied authority may be presumed.

Supreme Court—Language in Opinion to be Read in Light of Facts.

8. The language used in an opinion of the supreme court must be read in connection with the facts on which it is based.

Promissory Notes—Corporate Notes—Misappropriation of Proceeds by Officer Executing Note not Want of Consideration.

9. Where plaintiff in an action on a corporate note parted with her money to the general manager of a mining corporation as its agent, misappropriation of the proceeds thereof by such agent did not result in failure of consideration for its issuance; if the corporation was defrauded, it, and not plaintiff, must bear the loss.

Same—Attorney's Fee—Court may Fix Without Hearing Testimony—Exclusion of Evidence—Harmless Error.

10. Since the district court may determine what constitutes a reasonable attorney's fee in an action on a promissory note without hearing expert testimony, exclusion of testimony on the subject is harmless error.

Appeal—Supreme Court may Direct Entry of Proper Final Judgment.

11. Under section 8805, Revised Codes of 1921, the supreme court has the power, on reversal of the judgment appealed from, to direct entry of the proper judgment in favor of appellant where the record contains a full recital of all that took place at the trial

---

and it is apparent that the respondent, after submitting all the evidence at his command in resistance of appellant's cause, failed to defeat or diminish the latter's claim.

---

[1–3]    Bills and Notes, 8 C. J., sec. 1017, p. 744, n. 30; sec. 1265, p. 966, n. 12; sec. 1296, p. 990, n. 9; sec. 1299, p. 995, n. 70.   Contracts, 13 C. J., sec. 145, p. 312, n. 67.   Witnesses, 40 Cyc., p. 2501, n. 94; p. 2507, n. 16.

[4]    Witnesses, 40 Cyc., p. 2691, n. 99; p. 2699, n. 33.

[5]    Corporations, 14a C. J., sec. 2251, p. 400, n. 47; sec. 2978, p. 855, n. 66 New.

[6]    Corporations, 14a C. J., sec. 2554, p. 605, n. 37; sec. 2776, p. 724, n. 23; p. 725, n. 25.   Evidence, 22 C. J., sec. 588, p. 485, n. 82.

[7]    Corporations, 14 C. J., sec. 5, p. 52, n. 23; 14a C. J., sec. 2215, p. 354, n. 78; sec. 2216, p. 355, n. 93; sec. 2217, p. 357, n. 17; p. 358, n. 21, 22; sec. 2250, p. 396, n. 15; sec. 2272, p. 423, n. 95; sec. 2548, p. 602, n. 87; sec. 2551, p. 603, n. 9.

[8]    Corporations, 14a C. J., sec. 2249, p. 396, n. 12; sec. 2312, p. 457, n. 43 New.   Courts, 15 C. J., sec. 376, p. 970, n. 30.

[9]    Corporations, 14a C. J., sec. 2560, p. 609, n. 90.   Evidence, 22 C. J., sec. 166, p. 199, n. 35; sec. 167, p. 199, n. 36.

[10]    Bills and Notes, 8 C. J., sec. 1209, p. 923, n. 67; sec. 1264, p. 965, n. 5.

[11]    Appeal and Error, 4 C. J., sec. 2986, p. 1004, n. 63; sec. 3228, p. 1191, n. 28.   Bills and Notes, 8 C. J., sec. 1438, p. 1103, n. 81.

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

ACTION by Edna A. Alley against the Butte & Western Mining Company.   Judgment for defendant and plaintiff appeals. Reversed and remanded, with directions to enter judgment for plaintiff.

*Mr. W. D. Kyle,* for Appellant, submitted a brief and argued the cause orally.

The defendant company possessed the power to execute the note in suit.   (*Mahoney Min. Co.* v. *Anglo Cal. Bank,* 104 U. S. 192, 26 L. Ed. 707 [see, also, Rose's U. S. Notes]; *Reade* v. *Pacific etc. Assn.,* 40 Or. 60, 66 Pac. 443; Clark & Marshall on Private Corporations, sec. 181; 14a C. J., pp. 724, 725, sec. 2776.)   The contention was urged all through the trial by defendant's counsel, and the court gave as its reason for directing a verdict, that in the absence of authority from the board of directors, the execution of the note in suit by the

president and secretary was ineffective to bind it.   The record
disclosing that the note in suit was signed by the president and
secretary of the defendant company, and that its corporate
seal was affixed thereto, was sufficient to *prima facie* establish it
as the obligation of the defendant.   (*Genzberger* v. *Adams,* 62
Mont. 430, 205 Pac. 658; *Pacific State Bank* v. *Coats,* 205 Fed.
618, Ann. Cas. 1913E, 846, 123 C. C. A. 634; *Hardy* v. *Black
Mammoth Min. Co.,* 47 Nev. 275, 220 Pac. 241; *San Ramon
Valley Bank* v. *Walden Co.,* 53 Cal. App. 534, 200 Pac. 662;
*Anderson Transfer Co.* v. *Fuller,* 174 Ill. 221, 51 N. E. 251;
*Bullen* v. *Milwaukee Trading Co.,* 109 Wis. 41, 85 N. W. 115;
*Frazier* v. *Swain,* 147 Ga. 654, 95 S. E. 211; Thompson on
Corporations, 2d ed., 1922.)

Where a contract is within the corporate powers, is regular
on its face, and purports to be executed in the name of the
corporation and signed by the proper officials, a presumption
of authority arises, and a person dealing with its officers need
not prove specific authority, and the burden of proving want
of authority in the particular officer or agent to execute the
contract in question is upon the party, usually the corporation,
who sets it up.   (14a C. J., sec. 2251, pp. 400, 401; *In re
Lance Lumber Co.,* 224 Fed. 598; *Perryman & Co.* v. *Farmers'
Union etc. Co.,* 167 Ala. 414, 52 South. 644; *Louisville N. A.
& C. Ry. Co.* v. *Louisville Trust Co.,* 174 U. S. 552, 43 L. Ed.
1081, 19 Sup. Ct. Rep. 817 [see, also, Rose's U. S. Notes];
*Merchants' Bank* v. *State Bank,* 10 Wall. (U. S.) 604, 19
L. Ed. 1008; *St. Vincent College* v. *Hallett,* 201 Fed. 471, 119
C. C. A. 647; *Lloyd & Co.* v. *Matthews & Rice,* 223 Ill. 477,
114 Am. St. Rep. 346, 7 L. R. A. (n. s.) 376, 79 N. E. 172;
*Neosho Valley Inv. Co.* v. *Hannum,* 10 Kan. App. 499, 63
Pac. 92; *Hudson River etc. Co.* v. *Hanfield,* 36 App. Div. 605,
55 N. Y. Supp. 877; *Patterson* v. *Robinson,* 116 N. Y. 193, 22
N. E. 372; *Chemical National Bank* v. *Kohner,* 85 N. Y. 189;
*Lee* v. *Pittsburg Coal & Min. Co.,* 56 How. Pr. 373, 75 N. Y.
601; *Ransome Concrete Machinery Co.* v. *Moody,* 282 Fed.
29; *Murchison Nat. Bank* v. *Dunn Oil Mills Co.,* 157 N. C.
302, 73 S. E. 93; *McKee* v. *Cunningham,* 2 Cal. App. 684,

84 Pac. 260; *Manross v. Uncle Sam Oil Co.,* 88 Kan. 237, Ann.
Cas. 1914B, 827, 128 Pac. 385; *Sweeney v. United Under-
writers Co.,* 29 S. D. 576, 137 N. W. 379.)

The testimony of Goodman to the effect that the money
represented by the note in suit was paid out by the defend-
ant's manager for the benefit of another corporation, which
the record discloses is wholly hearsay with him, does not pre-
clude the plaintiff from recovery, no duty resting on her to
see that such money was enjoyed by the defendant, and the
record not disclosing any knowledge whatsoever on her part
that such use was to be made of it.   (*American Nat. Bank v.
Ulm,* 21 Mont. 440, 54 Pac. 563; *Rodabaugh v. Kauffman,* 53
Cal. App. 676, 200 Pac. 747; 8 C. J., sec. 1026, p. 79.)

The plaintiff having relied upon the statutes of this state
and the decisions of this court dispensing with the necessity
of her proving a consideration for the note, it was clearly
erroneous for the trial court to permit the defendant on its
cross-examination of the plaintiff's witnesses over the plaintiff's
objection to inquire thereinto.  (*Dilts v. Brooks,* 66 Mont.
346, 213 Pac. 600; *Schauer v. Morgan,* 67 Mont. 455, 216
Pac. 347; *Ford v. Drake,* 46 Mont. 314, 127 Pac. 1019; *Borden
v. Lynch,* 34 Mont. 503, 87 Pac. 609; *State v. Smith,* 57 Mont.
349, 188 Pac. 644; *Shandy v. McDonald,* 38 Mont. 393, 100
Pac. 203; *Pelican v. Mutual Life Ins. Co.,* 44 Mont. 277, 119
Pac. 778.)

*Messrs. Wheeler & Baldwin,* for Respondent, submitted a
brief; *Mr. James H. Baldwin* argued the cause orally.

Appellant contends that the court unduly extended the right
of cross-examination.  Before she could prevail in the case the
burden was upon her to prove the existence of each of the
elements essential to the existence of a contract.  She sought
to do this by introducing in evidence, on her direct examina-
tion, the purported note, upon which her claim is based, and
as a result thereof respondent had the undoubted right on
cross-examination to put any question tending to show that
any one of the elements essential to the legal existence of the

pretended contract was wanting, including a lack of considera-
tion for the making of the contract alleged to have been en-
tered into between appellant and respondent.

The statute relating to the right of cross-examination should
be liberally construed, and the examination not unduly re-
stricted. (*Downey* v. *Northern Pac. Ry. Co.*, 72 Mont. 166,
232 Pac. 531; *McCarthy* v. *Anaconda Copper Min. Co.*, 70
Mont. 209, 225 Pac. 391; *State* v. *Ritz*, 65 Mont. 180, 211 Pac.
298; *State* v. *Whitworth*, 47 Mont. 424, 133 Pac. 364.)

The cases cited by appellant in support of her contention that
defendant corporation possessed the power to execute the note
in question are not authority here. In 14a C. J., 399, section
251, it is stated that "as a general rule, the burden rests upon
one who seeks to hold a corporation liable for an act, or on a
contract of an officer or agent, to show that the doing of the
act or the execution of the contract, was properly authorized."
(*Louisville N. A. & C. R. R. Co.* v. *Louisville Trust Co.*, 174
U. S. 552, 43 L. Ed. 1081, 19 Sup. Ct. Rep. 817 [see, also,
Rose's U. S. Notes] ; *Pierce* v. *United States Bank*, 7 Wall.
(U. S.) 666, 19 L. Ed. 169; *St. Vincent College* v. *Hallett*, 201
Fed. 471, 119 C. C. A. 647.)

Defendant company was without power or authority in law
to execute or deliver the contract in issue. To fix liability
upon the corporation, it was necessary to establish not only
authority in the officer or agent to execute a paper, but also
power in the corporation to bind itself in that way. (3
R. C. L., p. 1091, sec. 300; *Johnson* v. *Johnson Bros.*, 108 Me.
272, Ann. Cas. 1913A, 1303, 80 Atl. 741; *In re Assignment
Mut. Guaranty F. Ins. Co.*, 107 Iowa, 143, 70 Am. St. Rep.
149, 77 N. W. 868; *Hall* v. *Auburn Turnpike Co.*, 27 Cal. 255,
87 Am. Dec. 75; *Kirkup* v. *Anaconda Amusement Co.*, 59 Mont.
469, 17 A. L. R. 441, 197 Pac. 1005; *New York & N. H. R.
Co.* v. *Ketchum*, 27 Conn. 170.)

Even if it had appeared from the evidence in this case that
the respondent corporation had authority to execute and de-
liver the note involved in this case, and that L. O. Goodman
and Ward Beley had general authority to manage its business,

or were expressly authorized to do all lawful acts concerning respondent's business of whatever nature or kind soever, the evidence would still have been insufficient to show that they had authority to execute and deliver the note (*Helena Nat. Bank* v. *Rocky Mt. Bell Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; *City Electric St. Ry. Co.* v. *First Nat. Exch. Bank,* 62 Ark. 33, 54 Am. St. Rep. 282, 31 L. R. A. 535, 34 S. W. 89; *New York Iron Min. Co.* v. *First Nat. Bank,* 39 Mich. 644).

It may be stated as a general rule that the president of a corporation has no power to bind it by his signature to commercial paper, unless the authority to do so is expressly conferred by the charter, or given by the board of directors. (*Monongahela Nat. Bank* v. *Harmony Land Co.,* 226 Pa. St. 444; *Gould* v. *Gould Co.,* 134 Mich. 515, 104 Am. St. Rep. 624, 2 Ann. Cas. 519, 96 N. W. 576; *Mathias* v. *White Sul. Springs Assn.,* 19 Mont. 359, 48 Pac. 624; *Bank of Deer Lodge* v. *Hope Mining Co.,* 3 Mont. 146, 35 Am. Rep. 458; *Moore* v. *Skyles,* 33 Mont. 135, 114 Am. St. Rep. 801, 3 L. R. A. (n. s.) 136, 82 Pac. 799; *United States Smelting Co.* v. *Wallapai M. & D. Co.,* 27 Ariz. 117, 230 Pac. 1106.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In 1925 Edna A. Alley brought action in the district court of Silver Bow county on a promissory note which she alleged was executed and delivered to her by the defendant, Butte & Western Mining Company, which she alleged was a corporation authorized to do business in the state of Montana. She alleged that she was the owner and holder of the note, that it was then past due and wholly unpaid, and that $600 was a reasonable attorney's fee in the suit.

By answer the defendant admitted its corporate capacity and that the note set out in the complaint was wholly unpaid. It denied all other allegations of the complaint, and as affirmative defenses alleged: (1) "That there was no consideration

for the execution and delivery of the pretended note''; and (2) that the said note "was to have been executed and delivered" to the plaintiff only upon payment by her to the defendant company of the sum mentioned therein, no part of which sum had ever been paid. The affirmative matter in the answer was denied by reply.

The cause came on for trial before the court with a jury. Plaintiff testified that she knew the signers of the note to be the president and secretary of the company and knew their signatures to be genuine; that she was the owner and holder of the note. She produced the note, which was admitted as an exhibit. This note is dated June 4, 1922, payable in five months; it provides that for value received the maker promises to pay to Edna A. Alley the sum of $5,980, with interest at four per cent from date, and provides for attorney's fees in case of suit; it was signed "Butte & Western Mining Co., by its president L. O. Goodman"; it bears the impression of the corporate seal of the company and the legend, "By its secretary, Ward Beley."

Over the objection of plaintiff's counsel, the defense was permitted on cross-examination to compel the plaintiff to testify as to the consideration for the note, which she stated was money on deposit belonging to her but in her husband's name, which she permitted her husband to invest or loan, acting as her agent, and was then compelled to admit that the only knowledge which she had of loans made was obtained from her husband, since deceased. On redirect examination the plaintiff testified that her husband was, at the time, the general manager of defendant company with offices at Butte; that at his solicitation as such general manager she loaned the money to the company. She further testified that at one time she attended a stockholders' meeting and there heard the president, L. O. Goodman, report to the stockholders on the liabilities of the company, in which report he "mentioned her name and indebtedness."

L. O. Goodman was then called as a witness for the plaintiff. He testified that he was the president of the company, and

identified a page in the minute-book of the company in his handwriting, containing a minute entry of the ratification by the board of directors of the issuance of certain notes aggregating more than $11,000. He was then asked if that amount included the note sued upon, and replied that it did not, but that all those notes were payable to himself. He was then asked: "Why was the ratification of the issuance of those notes to you limited to your notes and not to the notes previously signed by you as president of the company to Mrs. Alley?" He answered this question and others concerning the minute entry. Thereafter counsel for defendant moved the court to strike from the record the exhibit page and all testimony relating thereto, which motion was sustained and the evidence stricken from the record.

On cross-examination the defense was then permitted, over the objection that it was improper cross-examination, to have the following question answered: "Was any money or did the Butte and Western Company receive any money from any source in consideration for the note offered in evidence in this case as Plaintiff's Exhibit 'A'?" the court stating, "He was asked if he signed it." The answer was that it never dealt with Mrs. Alley in any manner, and never received any consideration for the note from her or any person acting for her. On redirect the witness explained this statement by saying that the money received by Alley was used in making payment on property owned by another corporation, in which he and Alley were interested, but when asked how he knew that, answered, "I knew from what I was told." He testified that Alley was the general manager of the company, but only as to its operations and without power to borrow money or issue notes. He stated, however, that prior to the giving of the note Alley had furnished the company with $800 or $900. He explained the reason for giving the note to Alley for Mrs. Alley was that Alley had, by letter, threatened to kill the witness and other members of the company and throw the company into the hands of a receiver if the note was not forthcoming. While the note was dated January 4, being

about the time the money was furnished, it was not, according to the witness, executed and delivered until April.

In refutation of his statement that Alley had no authority to borrow money, the witness was shown a letter written on company stationery and signed, "L. O. Goodman," in which he canvassed the condition of the company and called attention to its urgent need of money, and closed with, "so do anything you see fit that you think will get the money from any of your connections, and you have my backing." On defendant's objection the offer of the letter in evidence was excluded. On cross-examination the witness testified that neither the company nor anyone for it had authority to borrow money for the company.

Plaintiff attempted to show what amount would be a reasonable attorney's fee, but the offer was excluded, the court stating that it would take "judicial notice of what a reasonable attorney's fee is in a case of this kind."

Plaintiff rested, and thereupon defendant's counsel stated that "the defendant rests." Defendant then moved for a directed verdict, which motion was granted; the verdict was returned and judgment for defendant entered thereon. Plaintiff has appealed from the judgment, and makes twelve assignments of error. Assignments numbered 1 to 6, inclusive, predicate error upon the rulings of the court permitting the defense to make its proof on the allegation of want of consideration by the cross-examination of the plaintiff and the witness Goodman, which present the question as to whether plaintiff was required to go into the matter of consideration.

1. In support of the ruling, counsel for defendant contend [1–3] that the burden rested upon the plaintiff to establish each of the essential elements of a contract as enumerated in section 7468, Revised Codes of 1921, which includes "a sufficient consideration." While such consideration is an essential element of a valid contract, the contract here involved is a negotiable instrument, which is deemed *prima facie* to have been issued for a valuable consideration, and to which the

signer is deemed to have become a party for value (sec. 8431, Rev. Codes 1921; *Allen* v. *Montana Refining Co.*, 71 Mont. 105, 227 Pac. 582); the absence of consideration is, in such cases, a matter of defense as against any person not a holder in due course (sec. 8435, *Id.; United States Nat. Bank* v. *Chappell*, 71 Mont. 553, 230 Pac. 1084). In such an action it is not necessary to prove consideration, as the statutes above dispense with such proof, and the plaintiff here could have safely rested upon the proof of her note and her ownership thereof; nonpayment was admitted (*Schauer* v. *Morgan*, 67 Mont. 455, 216 Pac. 347); this she did, so far as her own testimony is concerned.

Had the minute entry of the company's board of directors and the testimony concerning it been permitted to remain in the record, the cross-examination of Goodman would have been proper, as counsel for plaintiff opened the door to such examination by his interrogation of the witness; but before any question was propounded on cross-examination, the exhibit and all testimony concerning the same were, on motion of the defendant, stricken from the record. There was then nothing left on which to base cross-examination except the statement by the witness that he signed the note, to which attention was called by the court in ruling on the first objection interposed. This testimony went only to the proof of the note and had nothing to do with the question of consideration. The cross-examination of Goodman is therefore in the same condition as that of the plaintiff.

2. "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith," *etc.* (Sec. 10665, Rev. Codes 1921.) This section permits a wide range for cross-examination, and it should not be unduly restricted when the matter inquired into is relevant to the subject matter of the examination in chief (*Downey* v. *Northern Pac. Ry. Co.*, 72 Mont. 166, 232 Pac. 531; *McCarthy* v. *Anaconda C. M. Co.*, 70 Mont. 309, 225 Pac. 391); but the cross-examination must be confined to matters deposed to in chief, and this rule applies to parties to the action as well

as other witnesses (*Borden* v. *Lynch,* 34 Mont. 503, 87 Pac. 609).

As the matter of consideration was presumed from the execution and delivery of the note and the want thereof was a matter of defense which must be pleaded by the defendant (*United States Nat. Bank* v. *Chappell,* above), and therefore proved by that party, and the plaintiff did not go into the matter in chief, questions concerning the consideration constituted improper cross-examination, and prejudicial error was committed in overruling plaintiff's objections to such questions.

3. Specifications 7 and 8 predicate error upon the exclusion [4] of the letter mentioned above and written by Goodman to B. V. Alley on the day which Goodman said he thereafter fixed as the proper date for the note sued upon. The objection to this offered exhibit was that it was irrelevant, incompetent and immaterial—a communication from Goodman as an individual and not as an officer of the company to B. V. Alley and not to plaintiff—and was an attempt to impeach plaintiff's own witness, not permissible under the law. As to these objections, it must be remembered that Goodman testified that he was the president of the company and that B. V. Alley was the general manager, and that Alley had no authority to borrow money for the company, and that he further testified that, at that time, the company was in good financial circumstances and needed no money.

Had this testimony been introduced at the proper time and in the proper manner, the letter would have been competent for the purpose of impeaching the witness on these damaging statements, and at any time would have been proper for the purpose of showing authority on the part of B. V. Alley to borrow money for the company, if the president of the corporation had that authority, for it would constitute a delegation of that authority to Alley. The letter was written on company stationery from the president of the company to its general manager, and concerned only the business of the corporation; it was immaterial that under these circumstances the

president did not add his title to his signature; it was a communication from the president nevertheless.

There is no merit to the contention that the introduction of the letter was an attempt to impeach plaintiff's own witness; it tended to show that the witness had at other times made statements inconsistent with his present testimony, and, under the then condition of the record, should have been admitted in evidence. (Sec. 10666, Rev. Codes 1921; *State* v. *Richardson,* 63 Mont. 322, 207 Pac. 124.)

4. The defendant contends that there was a failure of proof [5] in that, under the denial of the execution of the note, it was incumbent upon the plaintiff to prove the authority of its officers to execute the note, citing, among other cases, that of *Helena Nat. Bank* v. *Rocky Mt. Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; but our case cited is authority for the converse of this contention, for it is there said: "It was not necessary in law, under the issue raised by the averment and denial of the making, for plaintiff to prove that Ridgeway [the officer signing] had authority to act."

5. But it is contended further that this proof was necessitated by the affirmative defenses interposed. It must be here remembered that the note was in regular form and had all the *indicia* of corporate execution in the manner usually required by the by-laws of corporations, and that the affirmative defenses went only to consideration and contained a negative pregnant with the admission that the execution and delivery of the note were authorized and were dependent merely upon the passing of the consideration to the corporation. Again the plaintiff was not required to prove authority of the officers by reason of the issues raised by the answer.

6. Error is predicated upon the direction of verdict and the entry of judgment, and, as the defendant treated the testimony brought out by its cross-examination as its defense by moving for a directed verdict rather than for judgment of nonsuit, we will consider the assertions of the defendant in support of the action of the court as though the testimony was brought [6] out at the proper time and in the usual manner. The

first question thus presented is as to whether the corporation had power to borrow money and issue promissory notes therefor. In support of the ruling of the court, defendant insists that the record discloses the fact that the corporation had no power to borrow money or execute notes as evidence of its indebtedness.

"In the United States  *  *  *  it is held both in the federal courts and in the state courts that a private corporation, if not restricted by its charter, has implied power to make, draw, accept and indorse negotiable instruments, and assume all liabilities arising out of such a contract, whenever the transaction is necessary or proper in the conduct of its business." (Clark & Marshall on Private Corporations, sec. 181, citing the following cases as showing that the rule applies to mining corporations: *Mahoney Min. Co.* v. *Anglo-Californian Bank,* 104 U. S. 192, 26 L. Ed. 707; *Larwell* v. *Hanover Sav. Bank,* 40 Ohio St. 282; *Moss* v. *Oakley,* 2 Hill (N. Y.), 265; *Magee* v. *Mokelumne Hill Canal & Min. Co.,* 5 Cal. 258.)

In *Fidelity Trust Co.* v. *Louisville Gas Co.,* 118 Ky. 588, 111 Am. St. Rep. 302, 81 S. W. 927, it is held that corporations, other than those organized for governmental purposes, have the right to contract debts, borrow money, and give the customary evidences of debt; that such power is only limited by statute or the provisions of their charters, and need not be expressly granted. In an exhaustive note to this case in which the authorities on the subject are assembled and discussed, in 111 Am. St. Rep. 309, it is stated that, although there are many cases which apparently question the implied power of a corporation to borrow money, a close reading of the cases will disclose that they do not in fact so hold, but were decided under peculiar constitutional or statutory provisions or relate to particular transactions not involving the general principle announced.

The general rule announced is that the common-law powers of the ordinary private corporation are ordinarily the same as those possessed by an individual and may be employed in

the same manner; ''hence they may, unless restricted by their charters or some positive or clearly implied prohibition of law,'' borrow money, evidence their debt in the usual manner, and mortgage their property as security for its payment.

The reference in the foregoing authorities to restrictions found in the charter has no application here, as the ordinary business corporation, such as the defendant company, has no ''charter'' in the sense that the term is there used; its powers are prescribed by, and obtained through compliance with, the provisions of Part III of our Civil Code of 1921, of which the following mentioned sections are a part:

Section 5905 declares the contents of the articles of incorporation, which must be prepared and filed in the manner prescribed, and, when a certified copy thereof is filed with the secretary of state, that officer issues to the corporation a ''certificate'' showing merely that such copy complies with the law.

Section 5930 requires the adoption of a code of by-laws not inconsistent with the Constitution and laws of the state, and section 5931 provides certain things which may be included in the by-laws; while section 5994 defines the powers of a corporation, among which we find: ''7. To enter into any obligations or contracts essential to the transaction of its ordinary affairs, or for the purposes of the corporation.'' The only limitation upon this express power is that it shall not issue bills, notes, *etc.*, ''for circulation as money.'' (Sec. 5996.)

We have, then, in this state not only no law prohibiting the ordinary industrial corporation from borrowing money and giving its notes therefor, but one impliedly granting such power when necessary to the transaction of its ordinary affairs, or for the purposes of the corporation.

The testimony of the witness Goodman to the effect that the company had no such power was but the legal conclusion of the witness, and contrary to the law of the state, in the absence of a showing that, by the articles of incorporation or by-laws of the corporation, the powers of the company were restricted in this regard, and therefore had no evidentiary value.

7. It is next contended that, even though the corporation had
[7]   power to borrow money and issue notes as evidences of its
indebtedness, the president and secretary of the company could
not do so for the corporation unless specifically authorized
thereto by the board of directors.

A corporation is a fictitious person and can act only through
human instrumentality; its corporate powers must be exercised
and its business conducted by individuals, and, while those
powers may be exercised by its board of directors (sec. 5933),
organized by the election of a president, secretary and treas-
urer (sec. 5938), it is obvious that the every-day affairs of the
corporation cannot wait upon the periodical meetings of the
board, but must be attended to by officers and agents either
elected or appointed for that purpose.   The officer on whom
such responsibility naturally falls is the president, whose action,
in the execution of written instruments, is generally attested by
the secretary, who is the keeper of the seal.

With the growth of business transacted through the instru-
mentality of corporations, the rule has been adopted that:
"Where the president of a corporation makes a contract within
the ordinary scope of the business of the corporation, unless
notice to the contrary is given, a person dealing with the presi-
dent may proceed upon the assumption that the president has
authority as agent to bind it." (*Mathias* v. *White Sul. Springs
Assn.,* 19 Mont. 359, 48 Pac. 624.)

In *Mayger* v. *St. Louis Min. Co.,* 68 Mont. 492, 219 Pac.
1102, this court, speaking through Mr. Chief Justice Callaway,
said: "This court never followed the ancient rule that the
president of a corporation has no greater power than any other
director.   On the contrary, long ago, it adopted the more mod-
ern, and what Mr. Fletcher (3 Fletcher's Cyc. Private Corpora-
tions, sec. 2011), calls 'the sensible rule, in accordance with the
well-recognized ideas of the people at large, that a president of
a corporation is the head of the corporation subject to the con-
trol of the board of directors as to matters out of the ordinary,
but with power to bind the corporation in regard to contracts in-

volved in the everyday business of the corporation.' In *Trent*
v. *Sherlock*, 24 Mont. 255, 61 Pac. 650, Mr. Chief Justice
Brantly, said, 'No principle of law is more clearly settled than
that an agent to whom is intrusted by a corporation the man-
agement of its local affairs, whether such agent be designated
as president, general manager, or superintendent, may bind his
principal by contracts which are necessary, proper, or usual
to be made in the ordinary prosecution of its business.   [Citing
cases.]   The fact that he occupies, by the consent of the board
of directors, the position of such an agent, implies, without fur-
ther proof, the authority to do anything which the corporation
itself may do, so long as the act done pertains to the ordinary
business of the company.' ' '

Again we have held that, when a contract is properly signed
by the president and secretary of a corporation, as this note
was, and the seal of the corporation is affixed thereto, such
execution is *prima facie* evidence that the officers signing were
duly authorized to execute the instrument and that its execu-
tion was the act of the corporation.   (*Gensberger* v. *Adams*,
62 Mont. 430, 205 Pac. 658.)

The language used in the foregoing decisions is broad enough
to justify a holding that, in the absence of proof to the contrary,
either the president, general manager or superintendent of a cor-
poration has power to borrow money and execute promissory
[8]   notes for the corporation, but the declarations used in an
opinion must be read in connection with the facts on which such
declarations are predicated.   The general manager or superin-
tendent of a corporation may have charge and control only over
the physical property of the corporation and the men in its em-
ploy, while the financial affairs of the corporation may rest in
the hands of others, and contracts such as were considered in the
cases from which the quotations are made may fall within the
general scope of the duties of such officers.   Owing to the danger
to the corporation, or to an individual, attendant upon the
issuing of promissory notes by an agent, a more strict rule
is applied as to implied power of such agents to execute com-

mercial paper than that applied in the case of other contracts, and the declarations above referred to are too broad to be applied in cases wherein negotiable paper constitutes the contract; in such cases it does not do to say that either the president, general manager or superintendent may perform *any* act which the corporation might have performed, and in such cases we have heretofore laid down a contrary rule.

Thus in *Helena Nat. Bank* v. *Rocky Mt. Tel. Co.,* above, we held that the local "general manager" of a telegraph company had no implied general power to borrow money and execute notes in the name of his company, as "such authority must be expressly conferred or be necessarily implied from the exigencies and general course of the particular employment, or the act must be ratified by the principal," citing, among other cases, *New York Iron Mine* v. *First Nat. Bank,* 39 Mich. 644, in which Mr. Justice Cooley, holding that the general manager of mining properties had no such power, said: "The issuing of promissory notes is not a power necessarily incident to the conduct of the business of mining, and it is so susceptible of abuse to the injury, and indeed, to the utter destruction of a corporation, that it is wisely left by the law to be conferred or not as the prudence of the board of directors may determine." Again the language must be read with reference to the facts before the court. In the Michigan case the record disclosed that the financial affairs of the corporation were administered by its president in New York, while the maker of the note was general manager of the physical property in Michigan and could meet all demands of the corporation by draft upon the head office, which fact was known to the payee of the notes. It further appeared that the notes were given under circumstances tainting the transaction with fraud.

In the *Helena Bank Case* this court also quoted from Tiedeman on Commercial Paper, section 77, dealing with agents of natural persons, that "the presumption of law is more strongly opposed to the implied authority to execute negotiable instruments than to anything else, and, even where there is general authority

(given to an agent) to 'transact all business,' * * * it is generally held that the power to execute bills and notes is not included,'' saying, ''This rule is applicable to the managing agent or general manager of a nontrading corporation as well as to the agent of a natural person.'' In the next section of his work the author declares that ''where one is appointed to an office of clerkship, one of whose customary duties is to execute negotiable bills and notes in the name of the principal, the authority need not be expressly given. Thus the appointment as cashier of a banking house or business concern implies a grant of an authority to execute negotiable bills and notes.'' (Sec. 78.)

It seems clear, therefore, that there is a distinction to be drawn, in this regard, between a mere general manager of a corporation, or a superintendent of its property, and the president of the corporation having general management of the affairs thereof. On the subject of the power of the *president,* Mr. Thompson in his work on Corporations, second edition, section 1473, says: ''There is some contrariety of judicial opinion as to the implied power of a president to execute and issue notes of the corporation. There is no good reason for denying this power where the *president* is the general manager of the corporation and fully authorized to execute contracts on its behalf, * * * but ordinarily, in the absence of authority expressly conferred or implied from custom or acquiescence, the president cannot execute a note binding upon the corporation.''

It is apparent, therefore, that under certain circumstances the president has such implied power, and the implication should be more strongly drawn where, as here, the note in question is in the form and manner of a note issued and executed by the corporation itself. While there is respectable authority to the contrary, proof that such authority did not exist might constitute a good defense to a note issued by the president, but what is the instant situation? There is no proof here to uphold such a defense; on the contrary, the testimony

shows that other notes were executed in like manner at about the time the president said this note was, in fact, executed, and the execution of these notes was ratified by the corporation; and the proof clearly indicates that, as pleaded by the defendant, had the directors of the corporation considered that it had received the money, this note would have been valid from the beginning. The testimony thus tended to prove a custom and acquiescence from which implied authority might be presumed.

The defendant therefore failed to prove lack of authority to execute the note, if such proof would constitute a defense.

8. As to failure of consideration, the defendant's case [9] depends upon the statement made by Goodman that the funds were used by Alley in the payment of a debt other than that of the corporation; but this statement was purely hearsay, as he explained his statement by saying, "I knew from what I was told." But if we consider this evidence as competent, it does not constitute a failure of consideration. B. V. Alley was the general manager of the corporation; the plaintiff parted with her money to him as the agent of the corporation, and she cannot be held responsible for the misuse of the proceeds of the note. If B. V. Alley defrauded his principal, it, and not the plaintiff, must suffer. (*American. Nat. Bank* v. *Ulm,* 21 Mont. 440, 54 Pac. 563.) If Goodman had information that Alley diverted the funds in January, he should not have executed the note, as he said he did, in April following. The excuse given that Alley threatened him and other members of the corporation by letter is unavailing. We need not consider whether this evidence was sufficient to constitute a defense of duress or menace, as no such defense was pleaded, nor was any attempt made to prove such a defense. The evidence mentioned was merely brought out by questions propounded by plaintiff as to why, if there was no consideration for the note, it was executed and delivered.

9. The plaintiff predicates error upon the exclusion of testi- [10] mony concerning a reasonable attorney's fee, but, as the

court may determine that matter from the knowledge and experience of the judge, without expert testimony (*Bovee* v. *Helland,* 52 Mont. 151, 156 Pac. 416; *Bohan* v. *Harris,* 71 Mont. 495, 230 Pac. 586; *Gardiner* v. *Eclipse Grocery Co.,* 72 Mont. 540, 234 Pac. 490), if error was committed it was nonprejudicial error.

10. As we hold that the plaintiff established a right of re-
[11]   covery and the record contains a full recital of all that took place at the trial and that the defendant submitted to the trial court all that it had in resistance to plaintiff's cause, which proof is insufficient to defeat or diminish plaintiff's recovery, it is the province and the duty of this court to direct entry of a judgment in favor of the plaintiff and thus finally dispose of the matter on its merits (secs. 9751 and 8805, Rev. Codes 1921; *Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653), unless such action might, in the opinion of the court, work an injustice (*Hurley* v. *O'Neill,* 26 Mont. 269, 67 Pac. 626). As it does not appear to us that the direction would work an injustice in this cause, but, on the contrary, it does appear that plaintiff is, in justice, entitled to judgment, the judgment is reversed and the cause remanded to the district court of Silver Bow county, with directions to determine what sum is, under the circumstances, a reasonable attorney's fee to be allowed to plaintiff, and thereupon to enter judgment in favor of the plaintiff in accordance with the prayer for relief in her complaint contained.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES GALEN and STARK and HONORABLE HENRY G. RODGERS, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, concur.